## STANDARD OIL COMPANY, Plaintiff, v. JONES, State Auditor, et al, Defendants.

### (205 N. W. 72.)

File No. 5998.    Opinion filed August 29, 1925.)

1. Commerce—Interstate Commerce — Constitutional Law — Statute Imposing Annual License Tax on Each Oil Station Held Not Unconstitutional as an Attempt to Regulate Interstate Commerce.

Laws 1025, c. 229, amending Laws 1923, c. 225, Secs. 2, 5, 6, as amended by Laws 1925, c. 228, imposing license tax of $5 upon each oil station, held not unconstitutional as an attempt to regulate interstate commerce, since the tax is levied only on dealers intending to distribute or deal in motor fuel, sale of which is taxable under the act, which expressly exempts all interstate sales, and hence a station engaged in interstate commerce only is not subject to the tax.

2. Evidence—Dealers—Judicial Knowledge—Court Judicially Knows that There Are No Persons Within the State Falling Within Statutory Definition of "Dealer."

Court judicially knows that there are no persons falling within the definition of "dealer" in Laws 1925, c. 229, amending Laws 1923, c. 225, Secs. 2, 5, 6, as amended by Laws 1925, c. 228, as any person, firm, association, or corporation who produces, refines, manufactures, or compounds any motor vehicle fuel within the state for use distribution or sale within the state.

3. Licenses—Taxation—Gasoline—Statute Held to Manifest an Intention to Tax Users of Gasoline Within State 3 Cents per Gallon Through Agency of a Dealer's Tax.

Laws 1925, c. 229, amending Laws 1923, c. 225, Secs. 2, 5, 6, as amended by Laws 1925, c. 228, imposing a tax of 3 cents per gallon on gasoline, and a license tax of $5 on dealers,

manifests an intention to tax users of gasoline within the state 3 cents per gallon through the agency of a dealer's tax.

4. **Licenses—Constitutional Law—Statute Held Constitutional in So Far as Pertaining to Collection of a 3 Cents per Gallon Tax on Gasoline Through Agency of Dealers.**

Laws 1925, c. 229, amending Laws 1923, c. 225, Secs. 2, 5, 6, as amended by Laws 1925, c. 228, imposing a tax of 3 cents per gallon on gasoline, and a license tax on each dealer, held constitutional in so far as it pertains too collection of a 3 cents per gallon tax through agency of dealers.

5. **Taxation—Statutes—Classification Must Not Be Arbitrary, Making a Distinction Where None in Fact Exists.**

A classification, for purposes of taxation, must not be arbitrary, making a distinction where none in fact exists.

6. **Constitutional Law—Due Process—Licenses—Statute Imposing License Tax on Dealers in Gasoline Construed as an Occupation Tax, and Held Unconstitutional as Denying Equal Protection of the Law and Granting Privileges and Immunities.**

Laws 1925, c. 229, amending Laws 1923, c. 225, Secs. 2, 5, 6, as amended by Laws 1925, c. 228, imposing a license tax on dealers, defined so as to apply only to importers, imposes an occupation tax and is unconstitutional both in denying importers the equal protection of the law, and as violating Const., Art. 6, Sec. 18, forbidding grant to any citizens of privileges or immunities which upon same terms do not legally belong to all citizens or corporations.

Original action by the Standard Oil Company against Edward A. Jones ,as Auditor of the State of South Dakota, and others. Decree in accordance with opinion.

*Stephens, McNamee, O'Keeffe & Stephens,* of Pierre, for Plaintiff.

*Buell F. Jones,* Attorney General, for Defendants.

(1)  To point one of the opinion, Plaintiff cited:  Askren v. Continental Oil Company, 252 U. S. 444.

Defendant cited:  Osborn v. State (Fla.), 164 U. S. 654, 31 L. ed. 586; Pullman Co. v. Adams, 189 U. S. 420, 47 L. ed. 877; Kehrer v. Stewart, 197 U. S. 60, 49 L. ed. 663; Rawley Bros. v. Richardson, 69 L. ed. 615.

(5)  To point five, Plaintiff cited: 'Seaboard Air Line Ry. v. Simon, 20 L. R. A. (N. S.) 127; Pac. Express Co. v. Siovert, 142 U. S. 339; Chicago & R. R. Co., 128 Wis. 553; State v. Armour, 27 N. D. 117, 21 L. R. A. (N. S.) 83; Kallaher v. Port-

land, 57 Ore. 578, 112 Pac. 1076; In re William Hoffert, 34 S. D. 271.

(8)    To point eight, Defendant cited: State ex rel Kimberlite D. M. & W. Co. v. Hodges, 114 Ark. 155, 169 S. W. 942, L. R. A. 1916F, 122; State v. Zophy, 14 S. D. 119.

BURCH, C. This suit is an original action brought by the Standard Oil Company against the Auditor, Attorney General, and Treasurer to enjoin the collection of taxes under chapter 229, S. L. 1925, and especially the $5 annual license tax upon each place of business, as provided by said chapter.

In 1923 the Legislature passed chapter 225, S. L. 1923, providing a 2 cents per gallon tax on the sale of gasoline in this state. This act was re-enacted in chapter 228, S. L. 1925, substantially as originally enacted, with the exception that the tax was increased from 2 cents per gallon to 3 cents per gallon. Chapter 228 and chapter 229 were passed by the same Legislature, and approved by the Governor on the same day. Chapter 229 purports to amend sections 2, 5, and 6 of chapter 225, S. L. 1923, while chapter 228 purports to amend the entire act. Chapter 229 does not materially change section 2 of the act of 1923 as amended by said chapter 228, except that it adds thereto a provision for the payment of a license tax of $5 above referred to. Defendants have demurred to the plaintiff's petition and affidavit for injunction.

It appears from the application that the plaintiff is engaged in both interstate and intrastate business, having 251 bulk stations where a portion of their business is interstate, and 39 service stations where no interstate business is done. Plaintiff contends that the provisions of said chapter 229 are in contravention of the commerce clause of the Constitution of the United States, and void as an attempt to regulate and burden interstate commerce.

[1]    A similar case was before the United States Supreme Court in the case of Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. ed. 1139. In that case the state of New Mexico sought to levy a tax of 2 cents per gallon upon sales of gasoline in the state, and also an occupation tax of $50 on each station. No exceptions were made in the law of New Mexico as

to interstate business, but, inasmuch as the 2 cents a gallon tax was capable of being separated, and the tax on intrastate sales collected without interfering with interstate commerce, it was held that such tax was not in conflict with this provision of the United States Constitution.  On the other hand, the $50 occupation tax was held to conflict with the commerce clause of the federal Constitution, there being no exception permitting a dealer to deal in interstate commerce if he refused to pay the occupation tax.  Mr. Justice Pitney, in writing the opinion of the court, said:

"No doubt the state might impose a license tax upon the distribution and sale of gasoline in domestic commerce if it did not make its payment a condition of carrying on interstate or foreign commerce."

Reference to chapter 229 discloses that the $5 license tax is levied only upon dealers intending to distribute or deal in motor vehicle fuel, *the sale of which is taxable under this act.* Since the act expressly exempts all interstate sales, a station engaged in interstate commerce only is not subject to this tax.  The objectionable feature of the New Mexico statute has been avoided in this act.

Plaintiff's second contention is that the act is in contravention of the Fourteenth Amendment to the Constitution of the United States, in that it denies to the plaintiff equal protection of the laws with persons engaged in the business of selling motor vehicle fuel who do not import or cause to be imported from other states. While the title to said act expressly states that it is an act to impose a tax upon the *sale* of motor vehicle fuels, the true object and purpose of the act is to impose a tax of 3 cents per gallon on the purchasers of gasoline.  The entire act is directed to the devising of means to collect a tax from the purchaser and not from the seller.  A "dealer" is defined as follows:

" 'Dealer' means and includes any person or persons, firm, association or corporation who imports or causes to be imported from any other state or country, any motor vehicle fuel for operation propelling motor vehicles for use, distribution or sale in and after the same reaches the state of South Dakota; and also any person or persons, firm, association or corporation who produces, refines, manufactures or compounds any motor vehicle fuel in the

state of South Dakota for use,· distribution or sale within the state."

[2-4]  We take judicial notice that there are no persons in this state falling within the last definition of a dealer, and, so far as this law applies at this time, a dealer. is an importer.  It will be noticed that such dealer is required to pay 3 cents per gallon on all motor vehicle fuel (which for convenience we will call gasoline) used or sold in this state, and is permitted to charge this amount against the purchaser as a part of the selling price.  Thus it is seen that the tax is really collected from the purchaser, and that the dealer is merely an agency through which collection is made.  In order to avoid taxing interstate commerce, the act expressly excepts gasoline imported and sold in the original packages, giving, however, the dealer an option to pay this tax, and, if he does so, the purchaser in original package may be charged the amount of the tax as a part of the purchase price.  If the dealer does not pay the tax then the purchaser must do so.  Where the dealer has sold at wholesale but not in the original packages, being subject to regulation by the state, the dealer pays the tax and charges the amount to the purchaser at wholesale—thus there is no discrimination in not requiring such purchaser at wholesale to pay the tax on the gasoline retailed, he having already paid such tax to the importer.  He may charge the tax to the retail purchaser, thereby passing the tax to the ultimate consumer.  A careful study of this act convinces us that the true object and purpose of this act is to tax users of gasoline in the state 3 cents per gallon through the agency of a dealer's tax.  Every provision is to effect this result, to avoid any interference with interstate commerce, and to permit of no discrimination.  The justice of the tax is in its collection for the construction and maintenance of highways, from the users of such highways, in proportion to the use.  The only exception to the tax upon the consumer is in favor of those operating or propelling stationary gasoline engines, tractors used for agricultural purposes, motorboats, airplanes or aircraft, or those using gasoline for lighting, heating, cleaning, dyeing, or other commercial use not upon the highways.  Such users are exempted by a provision requiring a return of the tax which they have been compelled to pay.  If it were not in fact a tax on the consumer, there could be no justification for the

state to pay such consumer a tax collected of another. We think there is no doubt as to the constitutionality of this act in so far as it pertains to the collection of a 3 cents per gallon tax through the agency of dealers. If it were not for the amendment in chapter 229, S. L. 1925, providing for the collection of a $5 license tax upon each "dealer" as defined in the act, plaintiff could have no complaint. The definition of a dealer, as given in the act, was necessary to effect the collection of the 3 cents per gallon tax upon the consumer without unfair discrimination between the dealers competing in the sale of gasoline. The act is ingeniously drawn to effect its purpose, and at the same time to guard against unfair discrimination and interference with interstate commerce. But it does not follow that the same definition of a dealer can be used in levying an occupation tax. It is self-evident that such definition cannot be used. If the $5 tax be an occupation tax, we think it is discriminatory as between dealers in gasoline in its broader sense. With the introduction and use of motor vehicles have come the filling and distributing stations and garages with gasoline tanks and pumps, all designed to sell gasoline at retail, especially to motorists. Any one operating a filling station is as much a dealer in the true sense of the word when he buys his gasoline of an importer as when he buys his gasoline of a refiner and imports it. It is unfair and discriminatory to require one dealer to pay an occupation tax, while another in competition with him, doing identically the same business, with no difference excepting the person from whom he buys his product at wholesale, is not required to do so. The general principles illustrative of unfair discrimination may be found in the following cases: In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; State v. Doran, 28 S. D. 486, 134 N. W. 53; Seaboard Air Line Railway v. Simon, 56 Fla. 545, 47 So. 1001, 20 L. R. A. (N. S.) 127, 16 Ann. Cas. 1234; Waters-Pierce Oil Co. v. City of Hot Springs, 85 Ark. 509, 109 S. W. 293, 16 L. R. A. (N. S.) 1035; State v. Finch, 178 Minn 118, 80 N. W. 856, 46 L. R. A. 437; Pacific Express Co. v. Siebert, 142 U. S. 339, 12 S. Ct. 250, 35 L. ed. 1035; Chicago v. Railroad Co., 128 Wis. 553, 108 N. W. 557; State v. Armour, 27 N. D. 177, 145 N. W. 1033, L. R. A. 1916E, 380, Ann. Cas. 1916B, 1149; Kellaher v. Portland, 57 Or. 572, 112 P. 1076. See, also, 12 C. J. pp. 1152 and 1155; 4 R. C. L. 563.

If the purpose and object of the $5 license tax is to be construed as an occupation tax, then we are satisfied that this portion of the amendatory act, chapter 229, is unconstitutional, both in denying dealers who are importers the equal protection of the law and as violating section 18 of article 6 of the State Constitution forbidding the granting to any citizen privileges or immunities which upon the same terms do not equally belong to all citizens or corporations.

[5, 6] We do not want to be understood as holding that the tax on gasoline is in no sense a sales tax upon dealers. No doubt it is a tax in the sense that it may be collected under the sovereign power of the state to levy and collect taxes, but because of its purpose primarily to tax the consumer and not the dealers, no unnecessary burden should be placed upon the dealer which he cannot pass on to the consumer, because when this is done the dealer, as defined in this act, is taxed on his business or occupation, where his competitor engaged in the business, but buying his goods in this state, is not taxed on his business or occupation. Nor do we want to be understood as holding that the Legislature may not require the taking out of certificates and posting them in places of business for the purpose of identification; but the making of an arbitrary charge therefor, whether as a registration or license tax, is of doubtful validity. Probably there is no more reason why an importer should pay the costs of collecting a consumer's tax than any other citizen, but if a fund is necessary it may be collected from all or any class of citizens provided it falls equally upon all of a given class. The classification must not be arbitrary, making a distinction where none in fact exists. It is not necessary to decide whether or not a dealer under this act can be compelled to pay the cost of collection of the gasoline tax, or to apply for and obtain a certificate to be exhibited in his office as a condition to his right to carry on the business. The view we take of the $5 license tax prescribed in the amendment is that such tax is an occupation tax, and not applying to all dealers in gasoline doing the same business alike, it is violative of the constitutional provisions above mentioned.

The White Eagle Oil & Refining Company filed a brief herein as amicus curiæ, and its brief has been considered in connection with the briefs of the parties to this suit.

Other constitutional questions raised in the briefs affecting the validity of said chapter 229, S. L. 1925, need not be considered since the only provision of said chapter affecting the right of plaintiff is the license tax, which has been disposed of. The demurrer of defendants is overruled, and defendants are allowed ten days in which to answer if they desire to do so. If defendants do not within ten days answer the complaint of plaintiff, a perpetual injunction against defendants is allowed, restraining them from enforcing any of the provisions of said chapter pertaining to the said license tax of $5 on each place of business.

CAMPBELL, J., not sitting.