## MONAMOTOR OIL CO. *v.* JOHNSON, TREASURER OF IOWA, ET AL.

No. 555. Argued March 7, 8, 1934.—Decided April 2, 1934.

---

*Messrs. Paul E. Roadifer* and *M. D. Kirk,* with whom *Messrs. George S. Wright* and *Addison G. Kistle* were on the brief, for appellant.

*Mr. L. W. Powers,* Special Assistant Attorney General of Iowa, for appellees.

Mr. Justice Roberts delivered the opinion of the Court.

The appellant filed a bill in the District Court for Southern Iowa, seeking a declaration that the laws of Iowa laying a tax on motor vehicle fuel violate state and federal constitutional provisions, and an injunction against their enforcement by state officers. A temporary injunction issued, but a court of three judges, upon final hearing, dismissed the suit.[1] The case is here on direct appeal.

The general assembly of the State, in order to raise revenue for the improvement of highways, imposed a license fee of two cents per gallon on all motor vehicle fuel " used or otherwise disposed of in this state for any purpose whatsoever "; and directed that "Any person using motor vehicle fuel within the state shall be liable for the fee herein provided for unless the same shall have

---

[1] 3 F.Supp. 189.

been previously paid." [2]  By a later statute an additional license fee of one cent per gallon was imposed.[3]  The law defines " distributor " as " any person who brings into the state or who produces, refines, manufactures or compounds within the state any motor vehicle fuel to be used within the state or sold or otherwise disposed of by him within the state for use in the state."  " Person " is defined to include partnerships, corporations and associations.  One who sells at retail is required to keep posted in a public place a placard showing the total sale price per gallon, including license fee, and to have printed on the placard the words " state license fee included."  It is declared unlawful to conduct the business of a distributor unless a certificate giving certain information is filed with the state treasurer and a license is procured permitting the conduct of that business.  Every distributor is required on or before the twentieth day of each calendar month to file with the state treasurer a report showing the total number of gallons imported by him during the preceding calendar month, with details as to each shipment, and at the same time to remit to the treasurer the amount of the license fee for such preceding month; he may, however, deduct three per cent. of the gallonage for evaporation and loss.  If after the fee is remitted the fuel is destroyed by casualty not due to the fault of the distributor, before being sold or used, a refund of the tax paid

[2] Laws of the 41st General Assembly, Chapter 6, § 1, as amended by laws of 42d General Assembly, Chapter 248, § 1; Code of Iowa of 1931, Chapter 251–A1, § 5093–a1.

[3] " There is hereby levied on all motor vehicle fuel imported and used within this state a license fee of one cent per gallon, which shall be in addition to the license fee levied by chapter 251–A1.  All of the provisions and conditions of said chapter 251–A1 relating to the levy, collection or payment of the license fee on motor vehicle fuel shall apply with equal force to the license fee levied herein. . . ."  Laws of the 42d General Assembly, Ch. 103, § 1; Code of Iowa, 1931, Chapter 241–B1, § 4755–b38.

thereon is to be made by the state treasurer. The act declares that its provisions are not to apply to foreign or interstate commerce. As distributors import gasoline into Iowa for reshipment to other states, the state treasurer has, in the administration of the acts, permitted a deduction in the monthly reports of any gasoline so sold and reshipped to points outside the state.

There is provision that one using fuel purchased for a purpose other than for a motor vehicle may, upon making claim upon the state treasurer in proper form and in due time, obtain a refund of the amount of the tax paid in respect of it.

A penalty of ten per cent. of the amount of the tax is imposed upon a distributor who fails to remit on or before the twentieth of the month following the importation. The attorney general is empowered to bring action on behalf of the state against any distributor who is in default for thirty days in payment of tax. The state treasurer is authorized to revoke the license of a distributor who fails to render the prescribed reports, or renders a false report, or fails to pay the license fee when due, and he need not renew the license until satisfied that the applicant will in future comply with the law. Distributors are required to permit inspection of their books, records, papers, invoices and equipment. It is made a misdemeanor for a distributor or any principal officer to refuse to submit the prescribed reports and certificates to the treasurer, or to refuse an examination of books, records and equipment by the treasurer or his representatives, or to violate other provisions.[4]

The appellant is an Arizona corporation whose business is the buying, manufacturing, blending and selling of gasoline and kindred products, including the importation into Iowa of gasoline by tank cars, trucks and other con-

---

[4] Code of Iowa, 1931, Chapter 251–A1. See also § 4755–b38.

tainers, for resale to consumers and to dealers who sell to consumers, and the exportation of gasoline to other states; the maintenance of storage facilities in Iowa, from which deliveries are made in that and other states, and the maintenance of a refinery at Carter Lake, Iowa, where gasoline is blended and compounded and shipped to points in Iowa and other states. Prior to April, 1932, gasoline was refined at this plant. The corporation maintains numerous service stations in Iowa which sell to consumers. Upon the filing of a certificate with the state treasurer the company received a distributor's license; and between May, 1927, and May, 1932, paid to the state treasurer monthly, in accordance with the reports rendered, many thousands of dollars as license fees. There was included in the amount so reported and paid a tax at the rate of three cents per gallon on gasoline imported into Iowa and gasoline refined and manufactured at the refinery at Carter Lake. No question seems to have been raised as to the applicability and validity of the statute until about May, 1932. At that time a controversy arose out of the following facts:

Carter Lake, Iowa, where the appellant's refinery is located, now lies on the west shore of the Missouri River, not far from Omaha, Nebraska. It was originally on the east side of the river, the interstate boundary. By an avulsion the stream changed its course to the east of Carter Lake, but the old bed remained the interstate boundary. The refinery ships large quantities of gasoline to points in Nebraska and also to points in Iowa. The question arising whether the appellant should report gasoline which was ultimately distributed in Iowa upon its arrival at Carter Lake, or its manufacture there, or when it was shipped from Carter Lake to other points in Iowa, the state treasurer and the appellant agreed that importations into Carter Lake need not be treated as im-

portations into Iowa, but when gasoline arriving at Carter Lake or there manufactured should be shipped to other points in Iowa, it should be treated as then imported into the state for the purpose of report and payment of the tax by the appellant. This arrangement was made for the convenience of the parties.

Prior to May, 1932, the appellant shipped forty tank cars of gasoline from the refinery at Carter Lake to destinations in Iowa, for sale and use there. Its employees and agents altered the invoices and waybills on these shipments so as to show " gas-oil " instead of gasoline and omitted to report them to the state treasurer, or to pay tax upon them, as should have been done in accordance with the arrangement mentioned. When the state treasurer called appellant's attention to the falsification of its reports the representatives of the company for the first time asserted that as gasoline moving from Carter Lake to other points in Iowa had to pass through Nebraska the shipments were interstate, and a tax on them would be a burden upon interstate commerce. The state treasurer, having confirmed the facts by an audit of the company's books, caused the appellant and certain of its officers to be indicted for making a false return, procured the attorney general to bring a civil action against the appellant by attachment to recover the unpaid tax on gasoline imported and used within the state, and notified the appellant that he had revoked its license as a distributor. The individual defendants pleaded guilty and were fined, and the indictment was dismissed, as to the company. The civil suit was pending when the present bill was filed, asserting the invalidity of the law, and praying that the state treasurer and other officials be enjoined from interfering with the conduct of appellant's business as a distributor, from collecting the taxes imposed by the statutes, and from prosecuting the civil action in the state court.

The district court, whose jurisdiction was invoked by reason of diversity of citizenship as well as the alleged conflict of the state statutes and the federal constitution, dismissed the bill. The decision is challenged for several reasons, but we are of opinion that it was proper.

■ The amendatory act by which an additional tax of one cent per gallon was imposed is said to violate provisions of the Iowa constitution respecting the title and the substance of taxing laws. The district court examined these contentions and found them without merit. We concur in its conclusions.

■ There is no substance in the claim that the statutes impose a burden upon interstate commerce, contrary to the prohibition of Article I, § 8 of the Federal Constitution. The appellant insists that the tax is a direct tax on motor vehicle fuel imported. The court below concluded that the law laid an excise upon the use of fuel for the propulsion of vehicles on the highways of the state. The state officials have administered the tax on this theory. We think this the correct view. The levy is not on property but upon a specified use of property. *Altitude Oil Co.* v. *People,* 70 Colo. 452; 202 Pac. 180; *Standard Oil Co.* v. *Brodie,* 153 Ark. 114; 293 S.W. 753. It is not laid upon the importer for the privilege of importing (compare *Brown* v. *Maryland,* 12 Wheat. 419; *Bowman* v. *Continental Oil Co.,* 256 U.S. 642, 647), but falls on the local use after interstate commerce has ended. Compare *Sonneborn Bros.* v. *Cureton,* 262 U.S. 506; *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U.S. 249; *Edelman* v. *Boeing Air Transport, Inc.,* 289 U.S. 249. The statute in terms imposes the tax on motor vehicle fuel used or otherwise disposed of in the state. Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that purpose. This is a common and entirely lawful arrangement. *Cit-*

*izens National Bank* v. *Kentucky,* 217 U.S. 443, 454; *Pierce Oil Corp.* v. *Hopkins,* 264 U.S. 137; *Standard Oil Co.* v. *Brodie, supra; Standard Oil Co.* v. *Jones,* 48 S.D. 482; 205 N.W. 72. The distributor who reports the gasoline and pays the tax is required to pass the burden on to the consumer, who is advised that in addition to the price of the gasoline he is paying a license fee to the state. To prevent evasion the distributor must pay and pass on the tax on all gasoline imported or distributed, irrespective of its ultimate use; but as some purchasers employ the gasoline for a purpose other than the propulsion of a motor vehicle, and as the burden of the tax has been passed on to them as well as those who desire a motor fuel, provision is made for a refund to the former. Since the law declares that the levy is only upon use of motor vehicle fuel in the state, and the intent is not to affect interstate commerce, the state treasurer properly permits distributors to deduct as a credit from the gasoline returned as imported into the state in any calendar month, that which has been exported from the state by the distributor. Thus gasoline passing through the state to reach its ultimate destination is exempt. It is of course true that as the report is required on the twentieth of the calendar month for transactions of the preceding month, there may at times be gasoline received in the month covered by the report which has not been exported by the twentieth of the succeeding month; but the distributor is entitled to a credit for such exportation in his report made in the next month, and the mere fact that he cannot claim an anticipatory credit for gasoline not yet exported, but intended so to be, seems to us to be too slight a burden to be of any moment, or to raise a substantial constitutional question.

The appellant, however, says that the state officials have required it to report and to pay tax on shipments made from Oklahoma direct to dealers in Iowa who are

appellant's customers, and that in respect of such transactions the burden on interstate commerce is obvious. But if the gasoline so imported is intended to be used in Iowa for motor vehicle fuel it is subject to the tax. If it is not so used by the appellant's customer, or by the purchaser at retail, either may obtain a refund of the tax collected by the appellant and remitted to the state. The statute obviously was not intended to reach transactions in interstate commerce, but to tax the use of motor fuel after it had come to rest in Iowa, and the requirement that the appellant as the shipper into Iowa shall, as agent of the state, report and pay the tax on the gasoline thus coming into the state for use by others on whom the tax falls imposes no unconstitutional burden either upon interstate commerce or upon the appellant.

■ The method of imposition and collection of the tax does not deny the equal protection of the laws guaranteed by the XIV Amendment. Complaint is made of several features of the law which are said to create arbitrary discriminations. Appellant first says that as it must pay to the state a tax of three cents on every gallon of gasoline imported, whereas the user who employs the gasoline purchased for some other purpose than motor fuel may obtain a refund of the tax paid in respect of the fluid so used, the law attempts to impose a tax on the distributor for the benefit of persons who buy or use gasoline for some purpose other than the operation of a motor vehicle on the highways, and that the result is the imposition on the distributor of a tax for the benefit of this other class of persons.

The short answer to the contention is that the statutes properly construed lay no tax whatever upon distributors, but make of them mere collectors from users of motor vehicle fuel, and refund the tax only to that class of users upon whom no excise is intended to be laid. The distribu-

tor does not pay the tax; the user does. It cannot therefore be said that any tax is laid upon the appellant in ease of another class of taxpayers.

The amendatory act, levying an additional cent per gallon, is said to discriminate against the appellant because if gasoline were distilled or manufactured in Iowa it would escape taxation, since the amendatory statute refers only to gasoline " imported and used " within the state. This statute is, however, an amendment or supplement to the earlier act taxing use and disposition of gasoline for motor fuel (see *State* v. *Northern Iowa Oil Co.*, 209 Iowa 980; 229 N.W. 214), embodies by reference provisions of the earlier law (see Note 3, *supra*) and, as the District Court held, is, therefore, to be construed to cover gasoline whether imported or manufactured within the state. It appears, moreover, that no gasoline is or has been distilled or manufactured in Iowa except that which was distilled or manufactured by appellant prior to April 1, 1932. Since that date the appellant has not distilled or manufactured gasoline within the state. The appellant is not in a position to complain of any alleged discrimination arising from the terms of the statute, since it has not sustained injury and none is threatened which can affect it.

It is asserted that naphtha imported into Iowa and blended may escape the tax on the ground that it is not motor vehicle fuel imported into Iowa. The evidence, however, discloses that the officers charged with the administration of the law are insisting that the tax should be paid on naphtha so imported and blended and in fact are now prosecuting a suit against another defendant on this theory. No reason appears why, even if such naphtha were held free of tax, this would constitute an unfair discrimination against appellant, which is required to collect from users the tax on gasoline.

■ The revocation of the appellant's license by the state treasurer without notice and hearing did not deprive it of property without due process in violation of the XIV Amendment. Whether in other circumstances the license contemplated by the statutes under consideration might be considered property within the protection of the due process clause we need not determine. It is sufficient in this case to advert to the undisputed facts disclosed by the record. The law imposes no penalty for conducting the business of a distributor without a license; the only penalties mentioned are for failure to report gasoline intended for use in the state, and to pay the tax. The state officers have not sought to prevent the appellant from continuing its business as a distributor, and have in this proceeding, both by answer and by evidence, avowed their purpose to take no further action against the appellant, either criminal or civil, until the conclusion of the civil suit now pending in a state court to recover the tax, the failure to pay which was the ground of revocation of the appellant's license. The State's officials are prosecuting the action as a test suit. There is therefore no threat of immediate harm as a result of the revocation of the license, and the action of the state treasurer in revoking it cannot affect the pending civil suit or any other action civil or criminal which may hereafter be brought.

■ By its bill the appellant asked an injunction against the further prosecution of the action at law in the state court for the failure to report and to pay tax on certain gasoline. The court below pointed out that § 265 of the Judicial Code (U.S.C. Tit. 28, § 379) forbids the granting of this prayer, and the appellant admitted at the bar that it could not have such relief and did not insist upon it.

We find no error in the decision of the district court, and its judgment must be

*Affirmed.*