P. P. JOHNSTON v. EDWIN GILL, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 22 November, 1944.)

**1. Taxation §§ 15, 7—**

While a sales tax and a use tax may bring about the same result, they are different in conception. A sales tax is a tax on freedom of purchase and, when applied to interstate transactions, runs counter to the commerce clause of the Federal Constitution and is void. Conversely, a use tax is a tax on the enjoyment of that which was purchased after a sale has spent its interstate character. These taxes, taken together, provide a uniform tax upon either the sale or use of all tangible personal property irrespective of where it may be purchased.

**2. Taxation §§ 4, 15—**

Where one is engaged within this State in a regular business of soliciting orders for tailor-made clothing on commission, part of which he collects at the time the order is taken, and the clothes are shipped by the maker, who collects the balance of the price, directly to the purchaser, such transaction is subject to the use tax and the solicitor is a retailer and an agent for collecting the use tax, for which he is liable on his failure to do so.   G. S., 105-219, 105-220, 105-223.

**3. Taxation §§ 15, 7:  Sales § 11—**

The title to merchandise, sold and shipped from without this State to a person within the State, does not pass to the purchaser, when the shipment is C.O.D., until delivery by the carrier, who is an agent of the seller, hence a sales tax on such transaction would not contravene the commerce clause of the U. S. Constitution.

APPEAL by plaintiff from *Grady, Emergency Judge,* at September Civil Term, 1944, of WAKE.   Affirmed.

Civil action to recover taxes paid under protest.

The parties waived trial by jury and submitted the controversy to the judge presiding on the following agreed statement of fact: ·

"FIRST:   The plaintiff is a resident of the City of Charlotte, Mecklenburg County, North Carolina.   The defendant is a resident of the City of Raleigh, Wake County, North Carolina, and is the duly appointed, qualified and acting Commissioner of Revenue of the State of North Carolina.   This action is against the defendant in his official capacity.

"SECOND:   Continuously since 1 July, 1933, the plaintiff has maintained in Charlotte a place for the transaction of his business, which was as follows:

"Plaintiff was a representative of two tailoring establishments which are situated in Chicago, Illinois, *i.e.,* The Federal Tailoring Company, 119 South Wells Street, Chicago, and Jerome Tailoring Service, 402 South Market Street, Chicago.   Neither of these establishments had any property within the State of North Carolina, except the samples consigned to plaintiff as hereinafter stated, or was qualified to do business therein.   Plaintiff advertised his business as 'Chicago Woolen Mills,' and offered to the public to take orders for men's clothing.   Plaintiff kept in his place of business samples consigned to him by the Chicago tailoring establishments.   Customers desiring to have clothing made would come to plaintiff's place of business or would leave notice with, or telephone, plaintiff to come to their homes.   At either his place of business or the home of the customer, plaintiff would exhibit the samples which had been furnished him by the Chicago tailoring companies, and from these samples the customer would select a sample or samples of

the desired material. Plaintiff would then measure the customer for the desired clothing, entering the measurements on printed forms similar to the forms hereto attached and marked 'Exhibit A.' Thereupon plaintiff would collect from the customer a partial payment of the purchase price, which was in all cases less than the commission to which plaintiff was entitled for the sale. Plaintiff would then send the order for the clothing to one of the two Chicago tailoring companies, where the clothing was made and sent direct to the customer through the United States mails as a C.O.D. transaction. Periodically, the Chicago tailoring companies would remit to plaintiff the amount of commission to which he was entitled. Plaintiff did not deliver any clothing ordered or collect any money except the original down payment.

"THIRD: In October, 1942, the defendant, through one of his auditors, W. R. Ward, examined the records of plaintiff and assessed plaintiff with use tax under the asserted authority of Schedule I of the Revenue Act of 1939, as amended. The use tax was computed on the basis of 3% of the purchase price of each suit or other article of clothing shipped to customers in North Carolina in the manner outlined in paragraph 2. The assessment was as follows:

| | |
|---|---:|
| Total amount of tax | $ 62.68 |
| Add: Penalty | 6.27 |
| Add: Interest | 2.51 |
| Total tax, penalty and interest | $ 71.46 |

This assessment covered the period from 1 July, 1941, to 30 September, 1942.

"FOURTH: Upon the refusal of plaintiff to pay said use tax assessment, the defendant issued execution against plaintiff's property. Plaintiff thereupon paid under protest said tax assessment of $71.46, and duly made demand for a refund thereof. Defendant refused to refund the amount of the assessment and still refuses to do so. Plaintiff has complied with all requirements of law governing his right to institute this action to recover said assessment.

"FIFTH: The sole question for the determination of the Court is whether the assessment of use tax against plaintiff referred to in paragraph 3 was in all respects lawful and valid. If said assessment was for any reason not lawful and valid, and plaintiff was not liable to defendant for said sum of $71.46, or any part thereof, judgment should be rendered that plaintiff have and recover of defendant the sum of $71.46 (or any lesser sum found by the Court to be proper), together with interest thereon at the rate of 6% from 8 February, 1944, until

paid, and for the costs of this action. However, if the Court should find that said tax assessment was in all respects lawful and valid, and that plaintiff was liable to defendant for said taxes, penalty and interest in the amount of $71.46, judgment should be rendered that plaintiff take nothing by this action, and that defendant have and recover his costs."

The court, being of the opinion that the tax was lawfully levied and collected, rendered judgment that plaintiff recover nothing and that his action be dismissed. Plaintiff excepted and appealed.

*Murray Allen and Thaddeus A. Adams for plaintiff, appellant.*
*Attorney-General McMullan and Assistant Attorney-General Adams for defendant, appellee.*

BARNHILL, J. Plaintiff maintains a place of business in Charlotte, N. C., conducted under a trade name of his own choosing. His business is to sell tailor-made clothing on commission. His method is to take orders, make the necessary measurements and forward the order to the tailoring company which furnished the sample selected by the customer. It does not appear that orders were subject to acceptance by the tailoring companies. Plaintiff collects a "down payment" which ordinarily is less than his full commission. The tailoring companies with which plaintiff is associated and to which he sends orders periodically make settlement with plaintiff for unpaid commissions due.

Is plaintiff a "retailer" within the meaning of the North Carolina statute, G. S., ch. 105, Art. 8, Schedule I, and if so, is the tax imposed a tax upon the privilege of doing interstate business? These are the questions plaintiff poses by this appeal.

Every retailer engaged in the business of selling or delivering tangible personal property for storage, use, or consumption in this State is required at the time of selling or delivering such tangible personal property or collecting the sales price thereof to add to the sales price the amount of the tax imposed for the storage, use or consumption thereof within this State. When so added, said tax is made a part of the purchase price as the debt of the purchaser to the retailer until paid. The retailer is made liable for the collection thereof and for its payment to the commissioner "notwithstanding (a) that the purchaser's order or the contract of sale is delivered, mailed, or otherwise transmitted by the purchaser to the retailer at a point outside of this state as a result of solicitation by the retailer through the medium of a catalog or other written advertisement, or (b) that the purchaser's order or the contract of sale is made or closed by acceptance or approval outside of this state or before said tangible personal property enters this state, or (c) that

the purchaser's order or the contract of sale provides that said property shall be, or it is in fact, procured or manufactured at a point outside of this state and shipped directly to the purchaser from the point of origin, or (d) that said property is mailed to the purchaser in this state from a point outside this state or delivered to a carrier at a point outside this state, f.o.b., or otherwise, and directed to the purchaser in this state, regardless of whether the cost of transportation is paid by the retailer or by the purchaser, or (e) that said property is delivered directly to the purchaser at a point outside this state, if it is intended to be brought to this state for storage, use, or consumption in this state." G. S., 105-223.

" 'Retailer' means and includes every person engaged in the business of making sales of tangible personal property, or peddling the same, or soliciting or taking orders for sales, whether for immediate or future delivery, for storage, use, or consumption in this state," G. S., 105-219 (g), and " 'Engaged in business in this state' shall mean the selling or delivering in this state or any activity in this state in connection with the selling or delivering in this state of tangible personal property for storage, use, or consumption in this state," G. S., 105-219 (j).

Thus, under the specific definitions contained in the Act, the plaintiff is a retailer who made sales of tangible personal property for storage, use, or consumption in the State. In construing the Act these definitions are controlling. *Morris v. Chevrolet Co.,* 217 N. C., 428, 8 S. E. (2d), 484; *In re Steelman,* 219 N. C., 306, 13 S. E. (2d), 544; *Collins v. Texas,* 223 U. S., 288; *Tieman v. Red Top Cab Co.,* 117 Cal. App., 40; *South Shore Country Club v. People,* 228 Ill., 75; *State, ex rel. Baker v. Grange,* 200 Ind., 506; 50 Am. Jur., 262.

He is engaged in regular, continuous, persistent solicitation of orders for merchandise at a fixed place of business within this State. It would be indeed a strained and unusual construction of his activities to say that he is not engaged in business in this State, subject in all respects to the laws of this State.

The Act clearly constitutes the plaintiff an agent for the collection of the tax and renders him liable for failure to do so. This was a proper exercise of the legislative function. *Oil Co. v. Johnson,* 292 U. S., 86, 78 L. Ed., 1141; *Felt & Tarrant Mfg. Co. v. Gallagher,* 306 U. S., 62, 83 L. Ed., 488.

He is a resident of this State engaged in the business of taking orders and making sales of tangible personal property for use or consumption within the State. As a result of his activities, merchandise was actually delivered to and received by purchasers within North Carolina for use or consumption within the State. He failed to add the use tax to the

purchase price of such articles and to collect the same or provide for its collection upon delivery of the purchased property.

It follows that under the express terms of the Act he is liable for the tax assessed against him and collected by the Commissioner of Revenue.

But plaintiff stressfully contends that even though, under the terms of the Act, he is liable for the tax imposed, it is not collectible for the reason that it imposes a burden on interstate commerce. That is, he contends that his transactions are interstate in nature and quality and are not taxable by the State.

The soundness of this contention depends upon whether the tax is a sales tax and therefore, in so far as it affects interstate commerce, void, *McLeod v. Dilworth Co.*, 88 L. Ed., 910, or a tax on the enjoyment of the thing purchased after it has come to rest within the State. *General Trading Co. v. State Tax Commission*, 88 L. Ed., 914. The whole question is discussed by the Supreme Court of the United States with full citation of authority in the *McLeod case, supra*, and the *General Trading Co. case* just cited.

While a sales tax and a use tax in many instances may bring about the same result, they are different in conception. They are assessments upon different transactions and are bottomed on distinguishable taxable events.

A sales tax is a tax on the freedom of purchase and, when applied to interstate transactions, it is a tax on the privilege of doing interstate business, creates a burden on interstate commerce and runs counter to the commerce clause of the Federal Constitution. It is conceded that a statute undertaking to impose such a tax is void and the tax is uncollectible. *Western Live Stock v. Bureau*, 303 U. S., 250, 82 L. Ed., 823, 115 A. L. R., 944; *McLeod v. Dilworth Co., supra*, and cases cited. Conversely, a use tax is a tax on the enjoyment of that which was purchased after a sale has spent its interstate character. *McLeod v. Dilworth Co., supra*, and cases cited; *General Trading Co. v. State Tax Commission, supra*, and cases cited.

It may be said the boundary line between the two is narrow and oftentimes difficult to trace with accuracy. Even so, "A boundary line is none the worse for being narrow."

The tax is a tax on "the storage, use, or consumption in this state of tangible personal property purchased from a retailer within or without this state" and not a sales tax. G. S., 105-220. It is a compensating tax to place North Carolina manufacturers and merchants on a parity with nonresidents doing business in the State. Neither its purpose nor effect is to burden interstate commerce. Instead, it prevents undue discrimination against local retailers. Its chief function is to prevent the evasion of the North Carolina sales tax by persons purchasing

tangible personal property outside of North Carolina for storage, use, or consumption within the State. Thus it prevents unfair competition on the part of out-of-state merchants. It and our sales tax law, G. S., ch. 105, Art. 5, taken and applied together, provide a uniform tax upon either the sale' or use of all tangible personal property irrespective of where it may be purchased. That is, the sales tax and the use tax are complementary and functional parts of one system of taxation.

It does not lay a greater burden on the transactions involving an interstate delivery than it does on a wholly intrastate business of the same sort. It does not segregate interstate transactions for separate or special treatment. Interstate and intrastate business reach local markets and purchasers on identical terms so far as the effect of the State taxes are concerned. Hence, it neither discriminates against nor imposes a burden upon interstate commerce.

Full and adequate protection against double taxation is provided. G. S., 105-220, 221.

We are constrained, therefore, to hold that the tax here in controversy is to be classified as a use tax and that, under controlling decisions of the U. S. Supreme Court, it is not open to attack on constitutional grounds.

That the Act provides for the assessment of the tax at the time of sale and prior to the time the purchaser comes into actual possession of the thing purchased does not alter the essential character or purpose of the tax itself for, to be effectual, the tax must be collected prior to or at the time of delivery of the merchandise for use or consumption.

Furthermore, it is to be noted that the shipments of the merchandise sold by plaintiff were C.O.D. Hence, delivery to the carrier was not delivery to the purchaser. The carrier was the agent of the seller with instructions to deliver to the purchaser only upon payment of the purchase price. Hence, the sale was completed and both possession and title passed to the purchaser within this State. In view of this circumstance, the tax might well be sustained, even if classified as a sales tax, as not contravening the commerce clause as interpreted and applied in the *McLeod case, supra.*

As the tax collected from the plaintiff comes within the designation "use tax" and the Supreme Court of the United States is now firmly committed to the validity of such a tax, *Henneford v. Silas Mason Co.,* 300 U. S., 577, 81 L. Ed., 488; *Nelson v. Sears, Roebuck Co.,* 312 U. S., 359, 85 L. Ed., 888, 132 A. L. R., 475; *Nelson v. Montgomery Ward & Co.,* 312 U. S., 373, 85 L. Ed., 897; *General Trading Co. v. State Tax Commission, supra,* we conceive no valid reason why the judgment below should not be sustained.

It is, therefore,

Affirmed.