ATWATER-WAYNICK HOSIERY MILLS, INC., v. I. L. CLAYTON, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 14 December, 1966.)

**1. Taxation § 15―**

There is a distinction between a sales tax, which is a tax on the purchase price of property imposed at the time of sale, and a use tax, which is imposed on the use of property and cannot take effect before such use begins.

**2. Same―**

. The purchaser of mill machinery from an out of state dealer is subject to the use tax imposed by G.S. 105-164.4(h), notwithstanding that the contract to purchase was executed prior to the effective date of the statute, when the property is not delivered and its use by the purchaser does not begin until after the effective date of the statute.

APPEAL by defendant from *Morris, E.J.,* May 1, 1966, Assigned (Non-Jury) Civil Session, WAKE Superior Court.

The plaintiff instituted this civil action on November 20, 1963, to recover from the defendant, Commissioner of Revenue, the sum of $1,297.11 assessed and paid under protest as an excise or use tax on 30 hosiery mill machines manufactured in Philadelphia by Singer Fidelity, Inc., a Delaware corporation, and shipped to and

received by the plaintiff at its manufacturing plant in Reidsville, North Carolina. The contract for the machines was dated May 15, 1961, and accepted on that date by the manufacturer at its plant in Philadelphia. The machines were manufactured and delivered as they were completed — 10 in September, 1961, and like numbers in October and November following. All were manufactured after July 1, 1961. The plaintiff, at the time the manufacturer accepted the contract, made an initial deposit of $11,902.50 which was ten per cent of the total cost of all machines.

After the parties filed pleadings they waived a jury trial, agreed on all material facts, stipulated that all procedural steps had been followed, leaving for the court's decision this one question of law: "Is the taxpayer subject to the 1% North Carolina use tax on its purchase of hosiery mill machinery from an out-of-State vendor for use in this State where the contract to purchase is entered into prior to July 1, 1961, but the production and delivery of the hosiery machinery to the taxpayer does not occur until after July 1, 1961?"

The parties stipulated that if the trial judge should hold the tax collectible, the plaintiff's action should be dismissed at its cost. On the other hand, if the court concludes that the tax is not collectible, then judgment ordering a refund of $1,297.11, with interest from August 19, 1963, at six per cent, should be entered and the defendant charged with the costs.

Judge Morris, after hearing, concluded the tax is not due and collectible and entered judgment ordering the refund. The defendant excepted and appealed.

*McMichael & Griffin by Hugh P. Griffin, Jr., and Albert J. Post for plaintiff appellee.*

*T. W. Bruton, Attorney General, Charles D. Barham, Jr., Assistant Attorney General for the State.*

Higgins, J. All critical facts in this case were stipulated. Decision, therefore, involves the proper application of the North Carolina taxing statutes to the stipulated facts. G.S. 105-164.6 authorizes an excise tax "on the storage, use or consumption in this State of tangible personal property purchased within and without this State for storage, use or consumption in this State." G.S. 105-164.4 authorizes a tax of one per cent of the sales price subject to a maximum of $80.00 per article on (h) mill machinery sold to manufacturing industries and plants. As applied to the facts here involved, the taxing statutes became effective July 1, 1961.

The use tax here involved was designed to complement the sales tax and to reach transactions which could not be subject to a sales

tax by reason of its burden on interstate commerce. *Johnston v. Gill, Commissioner of Revenue,* 224 N.C. 638, 32 S.E. 2d 30; *McLeod v. Dilworth Co.,* 322 U.S. 327, 88 L. ed. 1304; *Western Livestock v. Bureau of Revenue,* 303 U.S. 250, 82 L. ed. 823, 115 A.L.R. 994. "While a sales tax and a use tax in many instances may bring about the same result, they are different in conception. They are assessments upon different transactions and are bottomed on distinguishable taxable events. . . . A sales tax is a tax on the freedom of purchase and, when applied to interstate transactions, it is a tax on the privilege of doing interstate business, creates a burden on interstate commerce and runs counter to the commerce clause of the Federal Constitution. . . . Conversely, a use tax is a tax on the enjoyment of that which was purchased after a sale has spent its interstate character." *Johnston v. Gill, Commissioner, supra.*

The parties stipulated the plaintiff, a North Carolina corporation engaged in the hosiery business, ordered for use in its business 30 machines from the manufacturer in Philadelphia. The order was accepted May 15, 1961. At that time the machines were not in existence. They were manufactured and delivered over a three months period beginning in September, 1961. The plaintiff contends the critical date is May 15, 1961, when the contract was accepted and the initial installment paid on the purchase price. Admittedly, on that date the use tax here involved was not in effect. It became effective on July 1, 1961. Obviously a use tax could not take effect before the use began. As to all machines the use was subsequent to July 1, 1961. "It (use tax) does not aim at or discriminate against interstate commerce. It is laid upon every purchaser, within the state, of goods for consumption, regardless of whether they have been transported in interstate commerce. Its only relationship to interstate commerce arises from the fact that immediately preceding the transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing of title, the merchandise had been transported in interstate commerce and brought to its journey's end." *McGolderick v. Berwind-White Coal Mining Co.,* 309 U.S. 33, 84 L. ed. 565; *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. ed. 814; *Halliburton Oil Well Co. v. Reiley,* 373 U.S. 64, 10 L. ed. 2d 202; *Johnston v. Gill, supra.*

We conclude the tax here involved was properly levied and collected by the Commissioner of Revenue. It follows that Judge Morris committed error in ordering the refund. The cause is remanded to the Superior Court of Wake County for the entry of judgment dismissing the action. The judgment entered in the Superior Court of Wake County is

Reversed.